UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAUL RUIZ,<br><br>  Plaintiff,<br><br>  v.<br><br>KELLY SERVICE GLOBAL LLC,<br><br>  Defendant. | No. 2:23-cv-02682-DAD-JDP<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO COMPEL ARBITRATION<br><br>(Doc. No. 3) |

This matter is before the court on defendant Kelly Service Global LLC's motion to compel arbitration. (Doc. No. 3.) On December 12, 2023, the pending motion was taken under submission on the papers. (Doc. No. 11.) For the reasons explained below, the court will grant in part and deny in part defendant's motion to compel arbitration.

**BACKGROUND**

On June 14, 2023, plaintiff Raul Ruiz initiated a wage-and-hour class action against his former employer, defendants Kelly Service Global LLC and E & J Gallo Winery, in the Stanislaus County Superior Court.[1] (Doc. No. 1) Defendant removed this action to this federal court on November 15, 2023. (*Id.*) In his operative first amended complaint ("FAC"), plaintiff

---

[1] Defendant E & J Gallo Winery was dismissed from this action on October 4, 2023, before the action was removed to federal court. (Doc. No. 1 at 2.) Defendant Kelly Service Global LLC is the only remaining defendant in this action.

1

asserts the following two causes of action against defendant: (1) violation of the Private Attorneys General Act, California Labor Code §§ 2698, *et seq.* ("PAGA"); and (2) violation of California's statutory unfair competition law, California Business and Professions Code §§ 17200, *et seq.* ("the UCL"). (*Id.* at 59–61.) Each claim is predicated on defendant's alleged violations of certain state wage-and-hour provisions in the California Labor Code. (*Id.* at 51–61.)

On November 3, 2023, prior to removal, defendant filed the pending motion to compel arbitration, arguing that by signing the "Dispute Resolution and Mutual Agreement to Binding Arbitration" ("the Agreement") (*see* Doc. No. 3-1 at 7–9), plaintiff had agreed to arbitrate any claims against defendant.[2] (Doc. No. 3-3.) The Agreement states in relevant part:

> 1. Agreement to Arbitrate. [Defendant] and I agree to use binding arbitration, instead of going to court, for any "Covered Claims" that arise between me and [defendant] . . . .
>
> 2. Claims Subject to this Agreement. The "Covered Claims" under this Agreement shall include all common-law and statutory claims relating to my employment, including, but not limited to, any claim for breach of contract, unpaid wages, wrongful termination, and for violation of laws forbidding discrimination, harassment, and retaliation on the basis of race, color, religion, gender, age, national origin, disability, and any other protected status. . . .
>
> 3. Exclusions from Agreement. The Covered Claims under this Agreement do not include claims for employee benefits pursuant to Kelly Services' ERISA plans, worker's compensation claims, unemployment compensation claims, *unfair competition claims*, and solicitation claims. . . .
>
> 4. Arbitration Rules. . . . The employment dispute resolution rules of the American Arbitration Association ("AAA") effective at the time of filing will apply . . . .
>
> 8. Waiver of Class and Collective Claims. Both [defendant] and I also agree that all claims subject to this agreement will be arbitrated only on an individual basis, and that both [defendant] and I waive the right to participate in or receive money or any other relief from any class, collective, or representative proceeding.

---

[2] In connection with its pending motion, defendant also filed requests for judicial notice, specifically asking the court to take judicial notice of certain federal and state court decisions in which courts have found that defendant's Agreement is not unconscionable. (Doc. No. 3-2.) Although unnecessary, because a district court may take notice of proceedings in other courts if those proceedings have a direct relation to matters at issue, *see United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992), defendant's request is granted.

2

1  (Doc. No. 3-1 at 7) (emphasis added).

2  On December 6, 2023, plaintiff filed his opposition to the pending motion, arguing that his UCL claim and individual PAGA claim should be stayed while only his representative PAGA claim should be compelled to arbitration. (Doc. No. 7.) Defendant filed its reply thereto on December 18, 2023. (Doc. No. 12.)[3]

## LEGAL STANDARD

A written provision in any contract evidencing a transaction involving commerce to settle a dispute by arbitration is subject to the Federal Arbitration Act ("FAA"). 9 U.S.C. § 2. The FAA confers on the parties involved the right to obtain an order directing that arbitration proceed in the manner provided for in a contract between them. 9 U.S.C. § 4. In considering a motion to compel arbitration, the "court's role under the Act . . . is limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). The party seeking to compel arbitration bears the burden of proving by a preponderance of the evidence the existence of an agreement to arbitrate. *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015); *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014) (citing *Rosenthal v. Great W. Fin. Sec. Corp.*, 14 Cal. 4th 394, 413 (1996)). "Arbitration is a matter of contract, and the FAA requires courts to honor parties' expectations." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 351 (2011). However, parties may rely upon generally applicable contract defenses to invalidate an agreement to arbitrate. *See id.* at 339.

There is an "emphatic federal policy in favor of arbitral dispute resolution." *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth*, 473 U.S. 614, 631 (1985). As such, "any doubts

---

[3] That same day, defendant filed a request for judicial notice of the AAA's Employment Arbitration Rules and Mediation Procedures ("the AAA rules") in effect in 2022. (Doc. No. 13.) Previously, defendant requested the court take judicial notice of the AAA rules in effect in 2023. (Doc. No. 3-2 at 2.) Defendant's requests for judicial notice (Doc. Nos. 3-2, 13) are granted. *See* Fed. R. Evid. 201 ("The court may judicially notice a fact that is not subject to reasonable dispute because it: . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."); *Kag West, LLC v. Malone*, No. 15-cv-03827-TEH, 2015 WL 6693690, at *3 n.2 (N.D. Cal. Nov. 3, 2015) (granting the plaintiff's request for judicial notice of the AAA rules).

1   concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Id.* at 626
2   (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)).
3   However, the Supreme Court has clarified that "the FAA's 'policy favoring arbitration' does not
4   authorize federal courts to invent special, arbitration-preferring procedural rules." *Morgan v.*
5   *Sundance, Inc.*, 596 U.S. 411, 418 (2022).

**ANALYSIS**

**A.    Plaintiff's PAGA claims**

In the pending motion, defendant requests that plaintiff's individual PAGA claims be compelled to arbitration and that plaintiff's representative, non-individual PAGA claims be stayed pending the resolution of that arbitration. (Doc. No. 3-3 at 32.) Plaintiff requests the same. (*See* Doc. No. 7 at 14.) Accordingly, the court will compel plaintiff to arbitrate his individual PAGA claims, and plaintiff's non-individual PAGA claims will be stayed pending the resolution of that arbitration. *See Adolph v. Uber Techs.*, 14 Cal. 5th 1104, 1123 (2023) ("[A]n order compelling arbitration of individual [PAGA] claims does not strip the plaintiff of standing to litigate non-individual claims in court."); *Bracamontes v. United Rentals, Inc.*, No. 2:23-cv-02697-DAD-CSK, 2024 WL 1884052, at *6 (E.D. Cal. Apr. 30, 2024) ("[T]he court will stay plaintiff's representative PAGA claims in keeping with the decision and instruction of the California Supreme Court in *Adolph*."); *Smith v. Spizzirri*, __U.S.__, 144 S. Ct. 1173, 1178 (2024) ("When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding.").

**B.    Plaintiff's UCL Claim**

    1.    <u>Whether the Arbitrability of Plaintiff's UCL Claim is Delegated to the Arbitrator</u>

In the pending motion, defendant argues that plaintiff's individual UCL claim should also be compelled to arbitration. (Doc. No. 3-3 at 17–23.) In his opposition, plaintiff argues that his UCL claim is not a "covered claim" within the scope of the Agreement and therefore cannot be compelled to arbitration. (Doc. No. 7 at 10–13.) Defendant counters in its reply that the gateway issue of the arbitrability of any claim is reserved for the arbitrator pursuant to the delegation clause incorporated into the Agreement. (Doc. No. 3-3 at 17–19.)

4

The Ninth Circuit has summarized the law in this area as follows:

> A delegation clause is a clause within an arbitration provision that delegates to the arbitrator gateway questions of arbitrability, such as whether the agreement covers a particular controversy or whether the arbitration provision is enforceable at all. The FAA 'allows parties to agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes.' But the Supreme Court has 'added [the] important qualification' that there must be 'clear and unmistakable' evidence that 'the parties agreed to arbitrate arbitrability.' . . .
>
> The following principles emerge from [Supreme Court] cases. First, a court must resolve any challenge that an agreement to arbitrate was never formed, even in the presence of a delegation clause. Next, a court must also resolve any challenge directed specifically to the enforceability of the delegation clause before compelling arbitration of any remaining gateway issues of arbitrability. Finally, if the parties did form an agreement to arbitrate containing an enforceable delegation clause, all arguments going to the scope or enforceability of the arbitration provision are for the arbitrator to decide in the first instance.

*Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1029–30 (9th Cir. 2022) (internal citations omitted).

At the first step, plaintiff does not contest the existence of the Agreement. However, at the second step, plaintiff argues that there is no clear and unmistakable evidence that the parties agreed to arbitrate arbitrability. (Doc. No. 7 at 5–10.) Defendant argues that the Agreement incorporates the AAA rules, which defendant argues the Ninth Circuit has held constitutes clear and unmistakable evidence of the intent to arbitrate arbitrability. (Doc. Nos. 3-3 at 18–19; 12 at 2–7); *see also Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) ("[W]e hold that incorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability."). Plaintiff contends that the AAA rules were not properly incorporated into the Agreement and that the AAA rules do not reflect a clear and unmistakable intent to vest the arbitrator with exclusive jurisdiction over gateway issues. (Doc. No. 7 at 4–5, 9–10.) Plaintiff argues that "[t]his is especially true considering the relative unsophistication of Plaintiff as an hourly employee of a temporary services employer." (*Id.* at 5.)

The court notes that the Ninth Circuit has expressly limited its decision in *Brennan* to contracts between sophisticated parties. 796 F.3d at 1131; *see also id.* ("But we need not decide

nor do we decide here 'the effect [if any] of incorporating [AAA] arbitration rules into consumer contracts' or into contracts of any nature between 'unsophisticated' parties.") (citation omitted) (alterations in original); *cf. Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 481 (9th Cir. 2024) ("Our circuit has not yet decided whether *Brennan*'s holding should extend to arbitration clauses in consumer contracts between a sophisticated entity and an average unsophisticated consumer."). "District courts have split over whether *Brennan* impacts cases involving unsophisticated parties . . . and reports of an established majority approach may be greatly exaggerated." *Fischer v. Kelly Servs. Global, LLC*, No. 23-cv-01197-JLS-JLB, 2024 WL 382181, at *9 (S.D. Cal. Jan. 31, 2024); *see also id.* at *9 n.10 (collecting cases stating that the majority approach is that *Brennan* applies to unsophisticated parties and cases stating that the majority approach is that *Brennan* does not apply to unsophisticated parties). The undersigned has previously found the better view to be that incorporating the AAA rules is not clear and unmistakable evidence of the intent to arbitrate arbitrability when one party is unsophisticated. *See Calzadillas v. Wonderful Co., LLC*, No. 1:19-cv-00172-DAD-JLT, 2019 WL 2339783, at *3–5 (E.D. Cal. June 3, 2019); *Fox v. Experian Info. Sols., Inc.*, No. 1:22-cv-01197-DAD-DB, 2024 WL 755804, at *3 (E.D. Cal. Feb. 23, 2024); *cf. First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 945 (1995) (noting that "the 'who (primarily) should decide arbitrability' question" is "rather arcane" and that "[a] party often might not focus upon that question or upon the significance of having arbitrators decide the scope of their own powers").

     Here, the court concludes that defendant has failed to show "'clear and unmistakable' evidence that 'the parties agreed to arbitrate arbitrability.'"[4]  *Caremark*, 43 F.4th at 1029. Plaintiff contends that he is an unsophisticated hourly worker of a temporary services employer. (Doc. No. 7 at 5.)  According to the declaration of Salah Ali, defendant's "Technology Enablement Manager," plaintiff was in fact a temporary employee of defendant. (Doc. No. 3-1 at

---

[4] The parties dispute whether the AAA rules were appropriately incorporated by reference into the Agreement. Plaintiff's uncontested lack of sophistication means that even if the AAA rules were incorporated, there would still be no clear and unmistakable evidence that the parties agreed to delegate arbitrability. Consequently, the court will assume without deciding that the AAA rules were incorporated into the Agreement.

6

2.) Defendant does not argue that plaintiff is sophisticated. Indeed, defendant does not address the issue of sophistication anywhere in its pending motion or its reply, let alone rebut the evidence from Ali's declaration. *Cf. Fli-Lo Falcon, LLC v. Amazon.com, Inc.*, 97 F.4th 1190, 1201 (9th Cir. 2024) ("Even assuming without deciding that plaintiffs sufficiently challenged the Delegation Provision and that their sophistication is relevant, their challenge fails because they have failed to create a dispute of material fact regarding their sophistication. And because the Delegation Provision is between sophisticated parties and incorporates the AAA rules, we must enforce it."). Accordingly, defendant has failed to establish that the court should not decide the arbitrability of plaintiff's UCL claim. *See Fox*, 2024 WL 755804, at *3 ("Defendant does not address the issue of the level of plaintiff's sophistication in its briefing or attempt to argue otherwise. Accordingly, the court finds that defendant has not rebutted the presumption, with clear and unmistakable language, that the issue of waiver should be decided by this court.") (internal citations omitted); *Fli-Lo Falcon*, 97 F.4th at 1200 ("Some courts . . . have focused on factors such as whether the plaintiff is a consumer as opposed to a corporation . . . whether the plaintiff 'had legal training or experience dealing with complicated contracts,' . . . and the length and complexity of the agreement[.]"); *Calzadillas*, 2019 WL 2339783, at *5 (finding that "seasonal agricultural workers" were unsophisticated where it was "unclear what level of education each has attained, but it is certainly a reasonable assumption that plaintiff and the putative class members are untrained in the practice of law").

        2.        <u>Whether Plaintiff's UCL Claim is a Covered Claim Under the Agreement</u>

Defendant next asserts that plaintiff's UCL claim is a "covered claim" under § 2 of the Agreement and therefore subject to arbitration. (Doc. No. 3-3 at 20–23.) Specifically, defendant argues that California state courts have consistently held that the term "unfair competition claims" refers only to common law, not statutory, unfair competition claims; plaintiff's UCL claim is "entirely derivative" of defendant's alleged Labor Code violations; and plaintiff's UCL claim is not premised on "unfair competition" as that term is commonly understood in, for example, Black's Law Dictionary. (*Id.* at 21–23.) Finally, defendant argues that if statutory UCL claims are exempted from the Agreement, "then essentially *all* common law and statutory claims related

7

to employment could arguably be exempted from the Agreement because *any* violation of law by a business can be seen as creating a competitive advantage vis-à-vis other businesses."[5] (*Id.* at 23.)

Plaintiff argues that the plain language of the Agreement unambiguously excludes UCL claims. (Doc. No. 7 at 11–12.) To the extent there is any ambiguity in the term "unfair competition claims," plaintiff contends that this ambiguity must be construed against defendant as the drafter of the Agreement. (*Id.* at 12.) Moreover, plaintiff contends that the California state court decisions cited by defendant are inapposite for several reasons. (*Id.*) Lastly, plaintiff argues that restricting "unfair competition claims" to common law claims is nonsensical in this context because it is unimaginable how employees could bring such claims against their employers in the first place. (*Id.* at 12–13.)

Having considered the parties' respective arguments, the court concludes that plaintiff's UCL claim is not a "covered claim" subject to arbitration. The court agrees with plaintiff that the plain language of the Agreement compels this conclusion. (*See* Doc. No. 3-1 at 7) ("The Covered Claims under this agreement do not include . . . unfair competition claims . . . ."). Defendant's argument that plaintiff's UCL claim is premised on the alleged Labor Code violations and therefore stems from plaintiff's employment is unavailing because § 3 of the Agreement clearly excludes claims notwithstanding their relation to plaintiff's employment. (*See id.*) (excluding "claims for employee benefits pursuant to Kelly Services' ERISA plans, worker's compensation claims, [and] unemployment compensation claims").

The court is also unpersuaded by defendant's argument that § 3 should be read only to exclude common law unfair competition claims from arbitration. Nothing in the text of § 3 suggests such a limitation. To the contrary, the reference to "unfair competition claims" appears alongside both statutory and common law causes of action. (*See id.*) While the court does not find the Agreement ambiguous, the court agrees with plaintiff that any ambiguity as to the

---

[5] Defendant provides no authority in support of this final argument, which the court does not find to be persuasive in any event. Defendant does not explain why, for instance, an employer reducing its labor costs by unlawfully underpaying its employees in order to obtain a competitive advantage should not be conduct understood as "unfair competition."

meaning of "unfair competition" in § 3 would need to be resolved against defendant as the drafter of the Agreement. *Cf. OptumRx, Inc. v. A&S Drugs LLC*, No. 22-cv-00468-FLA-JDE, 2023 WL 6170802, at *4 (C.D. Cal. Sept. 20, 2023) ("[c]onstruing ambiguities in the ADR Provision against OptumRx, the drafter," and finding that "[t]he language of this paragraph does not clearly establish an arbitration agreement covering 'any and all issues, disputes, or controversies'").

Moreover, the California state court decisions cited by defendant—i.e., the decisions holding that "unfair competition" refers only to common law unfair competition—are specific to the insurance context and thus inapposite. *See Bank of the W. v. Superior Ct.*, 2 Cal. 4th 1254, 1262–73 (1992); *Am. Cyanamid Co. v. Am. Home Assurance Co.*, 30 Cal. App. 4th 969, 975 (1994) ("In *Bank of the West v. Superior Court* . . . the Supreme Court construed the term 'unfair competition' within a liability insurance policy and held that it does not refer to conduct prohibited by the Unfair Business Practices Act. . . . The court reasoned that the liability policy covers *damages* caused by unfair competition but damages are not available under the Business Practices Act.") (internal citations omitted). Defendant does not cite to any authority in which a court applied the rule in *Bank of the West* to an arbitration agreement such as the one at issue here. In fact, courts have concluded that both statutory and common law unfair competition claims are excluded from arbitration agreements by language excluding "unfair competition" claims. *See Alvarado v. Rockwell Collins, Inc.*, No. 23-cv-00400-JFW-JC, 2023 WL 5505877, at *3 n.1 (C.D. Cal. May 24, 2023) ("Defendants also argue that the carve-out for claims for . . . [']unfair competition' only applies to common law claims for unfair competition, citing to Black's Law Dictionary. . . . [T]he Court concludes that the term 'unfair competition,' as used in the Arbitration Agreement . . . refers to unfair competition as broadly defined by Cal. Bus. & Prof. Code § 17200.").

Finally, the court's conclusion in this regard is strengthened by the fact that state and federal courts have specifically found defendant's arbitration agreements to exclude statutory UCL claims from arbitration. *See Amin v. Advanced Sterilization Prods. Servs. Inc., et al.*, No. 18-cv-01528-JVS-JDE, 2019 WL 2912862, at *8 (C.D. Cal. Jan. 7, 2019) ("Amin argues that the UCL claim is excluded by paragraph 3 of the Arbitration Agreement, entitled 'Exclusions

from Agreement,' which excludes 'unfair competition claims' from coverage. . . . [T]he Court rejects Kelly's argument that Amin's UCL claim is covered because it is asserted based on the same underlying employment-related conduct as his other claims."); *Guerra v. Kelly Servs., USA, LLC*, No. BC710740, at 8 & n.11 (Super. Ct. Cal. Dec. 17, 2018) (a case relied upon by defendant as to a different issue in which the state trial court noted that "the arbitration agreement carves out UCL claims from its scope" because "¶ 3 lists 'unfair competition claims' as one of the exclusions from the arbitration agreement").[6]

### 3. Whether the Class Waiver Applies to Plaintiff's UCL Claim

Defendant argues that plaintiff's class-wide UCL claim must be dismissed because § 8 of the Agreement requires that "all claims subject to this agreement will be arbitrated only on an individual basis, and that both Kelly Services and [the signing employee] waive the right to . . . any class, collective, or representative proceeding." (Doc. Nos. 3-3 at 23–24; 3-1 at 7.) Plaintiff argues that because § 8 expressly applies only to "claims subject to this agreement," and because his UCL claim is excluded from the scope of covered claims subject to arbitration, § 8 does not apply to his class-wide UCL claim. (Doc. No. 7 at 13–14.)

The court finds that the class waiver in § 8 of the Agreement does not compel dismissal of plaintiff's class-wide UCL claim because that claim is not subject to the Agreement by its own express terms.

Accordingly, the pending motion will be denied to the extent defendant seeks to compel plaintiff's individual UCL claim to arbitration and to dismiss plaintiff's class-wide UCL claim. Plaintiff's UCL claim will be stayed pending resolution of the arbitration of his PAGA claims. *See Amin*, 2019 WL 2912862, at *9 ("Here, Amin's non-arbitrable UCL and PAGA claims are based on the same conduct and issues as his arbitrable claims. Accordingly, the Court severs and stays Amin's claims under the UCL and PAGA pending arbitration of Amin's remaining claims.").

---

[6] Indeed, it would appear defendant has adopted the opposite position in previous litigation. *See Guerra*, No. BC701740, at 8 ("Acknowledging that . . . the arbitration agreement carves out UCL claims from its scope, Kelly requests that the Court stay such claims pending arbitration . . . .").

**CONCLUSION**

For the reasons explained above,

1. Defendant's motion to compel arbitration (Doc. No. 3) is granted in part and denied in part as follows:

    a. Plaintiff's individual PAGA claim is compelled to arbitration; and

    b. Defendant's motion to compel arbitration (Doc. No. 3) is denied in all other respects;

2. This action, which proceeds on plaintiff's UCL claim and representative, non-individual PAGA claim, is stayed pending the completion of arbitration;

3. Plaintiff and defendant are required to notify the court that arbitration proceedings have concluded within fourteen (14) days of the issuance of the arbitrator's decision;

4. The parties are required to file a joint status report within 90 days of this order, and every 90 days thereafter, to advise the court of the status of the arbitration proceedings; and

5. Because the action is now stayed pending the completion of arbitration, any dates and deadlines currently scheduled in this case are vacated.

IT IS SO ORDERED.

Dated:  **July 31, 2024**

DALE A. DROZD
UNITED STATES DISTRICT JUDGE

11